Good morning, everyone. I'd like to first recognize the presence of Chief Judge Donald Pogue, who is with us this morning. And Judge Shigaris and I would like to extend a great appreciation for Judge Pogue helping us out. Judge Pogue serves on the Court of International Trade, which is out of New York City, and we're very happy that he can be with us to give us a hand. Thanks very much. It's a pleasure. All right. We'll call the first case, Sutter v. Oxford. Ms. Theroux. Good morning, Your Honors. May it please the Court. Christine Durrell from Wagachlan-Manges on behalf of Appellant Oxford Health Plans, LLC. Your Honors, we're here because in two recent decisions, the Supreme Court in AT&T and Stolt-Nielsen has emphasized both the longstanding rule of law that arbitration agreements must be enforced in accordance with their terms as written, and have also established new rules of law that prohibit arbitrator and judicially manufactured consent to class arbitration under the guise of contract construction principles that are inconsistent with the FAA. Wasn't this clause, in fact, enforced as it was written? No, Your Honor, it wasn't. It was actually the arbitrator's reformulation of the party's arbitration clause and reliance on grounds specifically and expressly prescribed by the Supreme Court's decision in Stolt-Nielsen that led to the result that the arbitrator reached, which was … Well, now, are you advocating for a bright-line rule that if the arbitration clause does not contain class, that the parties couldn't have intended it, and therefore a class arbitration would be, you know, not … you'd not be able to have one? I certainly believe that the Supreme Court in Stolt-Nielsen held that where you have an agreement to arbitrate that is silent on the issue of class arbitration, you cannot infer from that silent arbitration agreement consent to class arbitration. Well, the statement that it reviewed was the parties had said something like, we have not reached an agreement as to class arbitration. All right? And the Court said you can't infer from that, that one way or the other, you can't make an inference. True. In those particular circumstances in Stolt-Nielsen, the parties did agree that there was no agreement reached as to class arbitration. Julie, if I remember correctly, the Court said you can't infer class arbitration on the basis of that statement. Is that correct? That is correct. But the overarching holding of Stolt-Nielsen is that you cannot infer consent to class arbitration from an otherwise silent agreement. And the Court said exactly the opposite in its footnote 10, when it said that we're not deciding what contractual basis could be used to infer that the parties had agreed to arbitrate. So here, what contractual basis should we look to? As I understand it, your client drafted the arbitration clause here, right? That is correct. So is that not a basis that the arbitrator would be appropriate, could appropriately point to, to use in his interpretation of this clause? To the extent that Your Honor is suggesting the doctrine of contra profferentum should be applied here to construe the agreement against the draft of the agreement here in Oxford, I would disagree. Because in order to apply that doctrine, you would first have to find that the clause is ambiguous. And, of course, the arbitrator here found that the clause was unambiguous. He found it clear, but he found it clear so that he didn't have to apply it because there was no question but what class arbitration was permitted. Correct. The way that he reached the result that class arbitration was permitted, however, was to reformulate the parties' arbitration clause. And I would direct Your Honors to Appendix page 55. Just to put this in context, are we supposed to do our own, is the court supposed to look at the parties' contractual rights and expectations and make our own interpretation of that clause? Certainly not. That is not the province of the courts in reviewing an arbitral award. There is certainly a high amount of deference that's applied to arbitral awards that are being reviewed by courts. Speaking of deference, indeed, we are reviewing the district court's review of the arbitrator's interpretation of the clause. And we would have to conclude, I think, that the arbitrator's interpretation of the phrase no civil action means no civil action concerning, let me read the clause for the record, no civil action concerning any dispute arising under this agreement shall be instituted before any court. It has to go to arbitration. But it doesn't exclude class sanctions, does it? I mean, we would have to say that the arbitrator's interpretation is totally, totally irrational. That's correct. That is the standard. The arbitrator's ruling would have to be totally irrational in order to justify vacater here. And the reason why. Why was it totally irrational? And that's where I'm going actually right now. What the arbitrator did, and I would direct your attention to pages 39 and 40 of the appendix, he reasoned that since a class action is a form of civil action, the clause can be paraphrased. No class action concerning any dispute arising under this agreement shall be instituted before any court, and all such disputes should be submitted to arbitration. And he then reformulated the clause by substituting the words civil action for dispute. So on pages 41 through 42 of the appendix, in the modified award, the arbitrator said, the clause is not at all silent. It plainly says no civil action and all such disputes are to go to arbitration. It was my task to construe that clause. All I found, and would again means all, without exception, the entire universe of actions that could possibly have been brought in any court, necessarily including class actions. Your Honors, the parties here agreed to arbitrate any dispute arising under this agreement. They did not agree to arbitrate any action. And the arbitrator's rewriting of the party's clause fundamentally changed the meaning of that clause. And that is the only way in which he was able to reach the conclusion he did. And as a rule. The phrase all such disputes refers back to no civil action, doesn't it? The phrase in the second phrase, I believe, of that sentence, all such disputes means no civil action. It doesn't exclude class actions. Well, first of all, the problem with the exclusion is the Supreme Court specifically stated in Stolt-Nielsen that you cannot rely on the lack of an express prohibition or exclusion of class arbitration in order to infer consent to class arbitration. It was your arbitrator said here, and it's a high hill to climb, as you know, that it's drawn very broadly. The sweep is very, very broad, broader than usual. You know, you have to get around that, I think. Certainly the clause is broad, but remember that in Stolt-Nielsen, the clause similarly provided for arbitration of all disputes arising from the making, termination of the agreement. Yeah, but you had the parties in that case saying we didn't mean class, and that's not present in this case. Certainly, if you were to look back in the record, and I think that they're cited extensively in the briefs, the claimant or the appellee here, Sutter, indicated repeatedly that his view was that if the party's arbitration agreement were enforced in accordance with its terms, it would necessarily require individualized resolution of the party's disputes. That was what he maintained at the trial court level throughout. And once again, I can't emphasize enough that the FAA's primary goal and court's goals in enforcing the FAA is to enforce the party's agreement as written, not as reformulated by an arbitrator. How do you, the Jock versus Sterling Jewelers case out of the Second Circuit, that seems to maybe cut against you. How do you read that case? Well, I think that, in short, I would say that the Second Circuit was incorrect in its reasoning, but I think that the primary thrust of the decision rests on the standard of review. And the Second Circuit actually stated that if the arbitrator is authorized to reach an issue, that's sufficient. You cannot vacate an award where the arbitrator was authorized. But here in the Third Circuit, at least, you have this irrationality standard that must be applied. Now, I could go on in greater detail as to why the Second Circuit's decision was incorrect. Maybe a more similar set of facts as to this case, because there was no indication by the party, basically a silent arbitration clause, and yet they found that class arbitration was fine. Well, actually, what the holding of Jock was that the district court was not allowed to substitute his own interpretation. That was the main thrust of the agreement. Now, if we want to look at the substance of what the Second Circuit then did, I think there are many problems that make this decision inconsistent with Stolt-Nielsen. And remember, of course, that the Second Circuit in Stolt-Nielsen was reversed by the Supreme Court in Stolt-Nielsen. It still sounds like you're advocating for a bright-line rule. They've got a specifically mentioned class in here to be dispositive. Well, I certainly, even if you do not agree with the view that silence cannot be construed as consent under the Supreme Court's decision in Stolt-Nielsen, at least in the circumstances present here where the arbitrator has reformulated and rewritten the party's agreement and has also imposed his own view of sound policy in order to reach a conclusion that he felt was not bizarre, you can't have, that just can't withstand vacator. Why should we agree that he's reformulating the clause rather than appropriately looking at surrounding circumstances and the purpose of the contract? I mean, he didn't have, in Stolt-Nielsen, the charter party agreement is a standardized form that was actually selected by the party invoking arbitration. That's a different circumstance than the circumstance we have here, where your client was invoking its own clause, which it had drafted, to require arbitration at this dispute. Now, why wouldn't those be appropriate circumstances for us to look to or for the arbitrator to look to in giving a different interpretation in regard to the party's intent? Well, under the FAA, the role of the arbitrator is to enforce the party's intent as expressed in their agreement. Because the arbitrator's authority derives from the party's consent and the party's agreement, he is not free to go outside of that and to try and find the best policy, for instance, to be applied under these circumstances, which the arbitrator here did. Nor is he authorized to rewrite the party's arbitration clause because that's fundamentally at war with the FAA. He said he wasn't doing that. He said he was looking at the party's intent. Do you think we should just ignore that aspect? Well, as the Supreme Court in Stolt-Nielsen stated, just because you say something is so doesn't necessarily make it so. And just because the arbitrators in Stolt-Nielsen said that they were looking at the party's intent did not make it so. And, of course, I would, again, point to the arbitrator's award itself, which makes clear that he was, in fact, relying on his own conception of sound policy. At the appendix on page 48, he says that class actions in court are absolutely prohibited by the first part of the clause but are at the same time not allowed, and the second part would mean that class actions are not possible in any form. In my view, that reading cannot be inferred in the absence of a clear expression that such a bizarre result was intended. Now, the result that he contends is bizarre is the very result that the Supreme Court reached in Stolt-Nielsen and in AT&T, and the AT&T court actually spoke of this issue and stated that states cannot require procedure, class arbitration, in that case, as here, that is inconsistent with the FAA, even if it is desirable for unrelated reasons. So your position, if I understand it correctly, is that it is impossible or irrational as a matter of plain English to interpret all such disputes, the phrase all such disputes, as authorizing class actions. Well, it's not the all such disputes. That has to do with the... All such disputes refers to civil actions. I see that I'm out of time. May I... It refers to the phrase no civil action. Please finish. Okay. The issue of substantive arbitrability, the scope of disputes that are subject to arbitration, which is any dispute arising under this agreement, is not the same as the process or the rule or procedures that were going to be applied in arbitration, and the arbitrator's conflation of those two things is what allowed him to rely on the breadth of the clause and reach the result that class arbitration is permitted. One other thing. You had said before that throughout the entirety of the litigation, your adversary took the opposite position. Are you arguing for judicial estoppel here? No, certainly not. That is just, again, indicia of the party's view of what enforcement of the arbitration agreement, in accordance with its terms, would result in, and that is individualized arbitration. All right. Very good. Thank you, Mr. Earle. Thank you. Mr. Katz. Good morning, Your Honors. If it pleases the Court, I represent Dr. Sutter, the appellee. Let me first deal with the issue regarding silence that's been raised by Your Honors. Since the inception of this matter, when it began as a litigation in the Superior Court, Dr. Sutter has argued that class arbitration was permitted if the arbitration clause was enforced. And he has always maintained the position that the arbitration clause authorizes class actions from the very beginning? Yes, Your Honor. We made an alternative argument back in 2002 before Judge Bernstein. First, we argued that the clause should not be applied because it did not, the arbitration clause did not allow for or did not include the arbitration of the main claims in the litigation, which were New Jersey statutory and regulatory claims. We argued in the alternative before Judge Bernstein, and I could cite to the record on page, appendix, page 122, and then 182, where we argued, and if I could just pull this up for a second. We had argued at 122 that, you know, if the court disagrees with the plaintiff and finds that the clause is valid, then you should certify this matter as a class-wide arbitration and then send it to AAA. In oral argument in October of 2002, and now I'm referring to page 182 of the transcript, I specifically said to Judge Bernstein in our colloquy, Your Honor, plaintiffs made an alternative argument, and I submit this court does have jurisdiction to decide the issue of class-wide arbitration. Ultimately, Judge Bernstein didn't decide the issue, but in his orders sending the matter to arbitration, and now I'm referring to page 80 of the appendix, he specifically said that all matters, including the issue of class arbitration, should be decided by the arbitrator. Let's get to the merits of, really, the interpretation of this phrase. Class arbitration is not mentioned in the arbitration agreement. Why should we read it into this phrase? Well, first of all, at the risk of stating the obvious, if class arbitration was stated in this phrase, we would not be here, and we would not have been fighting this for the last nine years. Judge Jagaris brought up the issue of a bright-line rule. There is no bright-line rule in the Stolt-Nielsen Supreme Court decision. In fact, as Chief Judge Pogue recognized, the court made very clear that they were not going to be scriveners of the agreement, that they were not going to decide what would be the contractual basis that would be permitted to infer a finding of class arbitration or to find expressly class arbitration. Here, the arbitrator Barrett, after deciding that there was not the kind of agreement as to silence that we had in Stolt-Nielsen, was required to interpret the agreement, and he did so. And he looked at the wording. He looked at what the clause allowed for, how broad it was, how limited it is. He looked at the wording, essentially Fundamental Contract 101, and he interpreted that the language, similar to the Jock case in the Second Circuit, which the district court decision was so heavily relied upon by Oxford before it got overturned, that this clause permitted. And in our case, Arbitrator Barrett didn't say it was implied. He actually said that he found that the parties expressly contemplated class arbitration. Is it possible to read Basel and Stolt-Nielsen as saying that that determination should have been made by the court rather than the arbitrator? No, I believe that it's the arbitrator, and I believe in Chief Judge Brown's district court decision, and he cited to the Vilch's opinion of this circuit, he made very clear that it's the arbitrator and not the court that should be deciding that issue. Frankly, back in 2002, I had argued that the state court judge should decide it, but under the FAA and under the rule of law. Well, Vilch's may not have quite gotten it right. I think the question posed by Vilch's is, does the clause forbid class arbitration? I think since Stolt-Nielsen, it's a little different, right? Wouldn't it be more, does the evidence suggest that the parties agreed to permit class certification? So maybe Vilch's doesn't have it exactly right. Well, I do think Vilch's, in terms of what it states about an arbitrator being the one to make this decision, is the law of this circuit. No, it's not. It's an NPO, right? It's not for publication. Well, understood. But it's certainly the practice in this circuit. Well, let me answer the question this way, Judge Chigueras. We are way past whether it should have been the judge or the arbitrator to make that decision, because given the procedural posture of this case now, this is up on appeal. And I'm not going to take up my time or the court's time in citing the bedrock principles that this court follows and this circuit follows in terms of looking at an arbitrator's decision. So if the court were now suddenly going to decide, well, we should be the ones making the decision on the class arbitration, you would have to find that the arbitrator was irrational, and his decision was so irrational that it's going to have to be thrown out. Was there an agreement that the arbitrator was to interpret the significance and meaning of this cause? Oh, yes. Yes, going back to initially 2003, when we first... So whether or not class action was authorized was left in the responsibility of the arbitrator. Did the parties agree to that? Well, yes, and my answer is twofold. Number one, it was the order of Judge Bernstein directing the arbitrator to decide this issue, and those orders are in the appendix. And number two, the arbitrator requested the party's positions at the time Basil came down as to this issue, and both parties acceded to that request and submitted their respective briefs and arguments. So, yes, the parties did concede that the arbitrator had the authority to make that determination, and which he did, and that determination held. And then when Stolt-Nielsen came down, Oxford asked for the arbitrator to look at it again, and the arbitrator was authorized to again look at the issue, and he did, de novo, looking at Stolt-Nielsen. So all along, the arbitrator did exactly what the parties authorized him to do, and he followed the law, he interpreted the law, and we all know the standard that even if this Court were to decide that Arbitrator Barrett made even a very serious error, that's not within the Court's province to substitute its own determination of the substantive issues in place of the arbitrator. Let me ask you this. Justice Alito had made a comment in Stolt-Nielsen, and I'm paraphrasing. He said that the impact of proceeding individually and proceeding as a class is so profound that the arbitrator should not presume that the parties intended class arbitration. Can you comment on that? Well, I do agree that if the arbitrator did make such a presumption, that would fall into that industrial brand of public policy implication that is prohibited by Stolt-Nielsen. You should not, under the Supreme Court decision in place now under Stolt-Nielsen or AT&T or under AT&T, you should not just assume because there's an arbitration provision that for a policy reason or any reason other than the intent of the parties based on their contractual intent should be the basis to determine that class arbitration should go forward. It must be based on the interpretation of the parties, of the contract as met by the parties, and that's what Arbitrator Barrett did here. As far as Oxford's arguments that it's pretextual when he says he didn't rely on public policy or he didn't rely upon a lack of an express prohibition, the opinion speaks for itself. Could you help me out just getting a little bit more background? What are the physicians seeking in class arbitration? Are they seeking a director to pay us our bills faster or sooner or more timely? Is that the essence of it? In other words, money damages is not an issue here. I recognize this doesn't go to the merits of this appeal, but I just want to get a little more background. This action, like a number of class actions that I've been involved with as class counsel against the managed industry concern New Jersey physicians that are seeking both monetary damages and injunctive relief essentially on two grounds. Pay us our claims promptly and also pay them correctly and don't employ arbitrary code processing policies that change the codes that are submitted by the physicians so you pay us less. Like if we provide service X, don't change the code and say we provided service Y and pay us less because of it, because we didn't do that. We provided service X. You cannot change the procedure codes and pay us less. Okay. That's helpful. Thank you. So this arbitration is now ongoing. We're into our 10th year and we've been up to the Third Circuit now twice and the case, which I'm hopeful if this Court rules in Dr. Sutter's favor, will continue to final resolution. I would like to just point out a couple of things that Judge T. DeSant, the Court, has any issues with regard to what Chief Judge Brown did. Chief Judge Brown certainly applied the correct standard in reviewing the vacator, recognizing the high hurdle that Oxford must overcome to overturn an arbitrator's award. He recognized that Arbitrator Barrett did what he was supposed to do and considered Stolt-Nielsen fully and completely. And he discussed in his opinion, Chief Judge Brown, what Arbitrator Barrett did and what was important, the important points. And this Court should not disturb Chief Judge Brown's opinion, nor should it disturb the opinion of Arbitrator Barrett. This Court must resist toppling the fundamental principles that have been in place here for decades in terms of how an arbitrator's award should be reviewed. And I will reiterate that if a bright line rule, and I do believe when push comes to shove or we boil it down, Oxford is looking for a bright line rule. If the bright line rule was it must expressly say class arbitration, some magic words, not only did the Supreme Court not say that in Stolt-Nielsen, but for all intents and purposes, there would no longer ever be class arbitration because I have yet to see any agreement that has the quote-unquote magic words, class action or class arbitration. That's not contract interpretation and Arbitrator Barrett did what he was supposed to do here. He should be affirmed, as should the District Court. Thank you. Thank you, Mr. Katz. Ms. Brewer, did you save time for rebuttal? I did, Your Honor. I saved three minutes. I have a feeling if we rule against you, arbitration agreements will have class action in them now, after that. We'll see. Perhaps so. But I just wanted to reemphasize that the arbitrator in this case substituted the word civil action for disputes. All disputes arising under the agreement were subject to arbitration. That is the scope or substantive arbitrability of this clause. What's wrong with that? There's nothing wrong with that, but what he did was substitute civil action for disputes, and that transposing of the language is what makes it improper. The all such disputes language in the second part of the clause modifies any dispute from the first part of the clause, not civil action. And so that is a very important point to emphasize here because the FAA, again, its fundamental tenet of FAA law is that you are supposed to enforce the arbitration agreement in accordance with its terms. Doesn't that only lead to the conclusion that the clause is ambiguous? If the arbitrator had found it ambiguous, then we would be here making an entirely different argument. But the bottom line is that the arbitrator found that it was unambiguous in his original award and never deviated from that in his modified award. If you now think it's ambiguous, then wouldn't it be construed against you? If the arbitrator had construed it to have been ambiguous, then the contra proferentum doctrine might arguably be properly applied. But that's not what he did here. And it's really not the province of courts, obviously under the admittedly deferential standard of review that's applicable to make decisions about whether or not there was an ambiguity at this point. In fact, both parties, Sutter and Oxford, agreed that the arbitration clause was silent. There's no question about that. It's certainly embodied in the record. The arbitrator, however, in his modified award said that it wasn't at all silent. That, in and of itself, cannot be found or derived from the party's arbitration agreement because it clearly is silent, nor can it be derived from the party's submission since both parties agreed that the agreement was silent. We would have to come out with a decision, if we support your view, saying that the arbitrator's interpretation of this clause is impossible, totally irrational. Wouldn't we have to use those words? You would have to reach the conclusion that the arbitrator's construction was totally irrational. And, in fact, a panel of this court earlier this year concluded that the arbitrator's effective rewriting of the party's agreement was irrational and needed to be vacated as a result, in Armstrong County Memorial Hospital versus United Steel. That was in March of 2011. So in that decision, certainly a panel of this court found that that kind of rewriting of the party's agreement resulted in appropriate vacater. The arbitrator's failure to enforce the party's agreement really just did not ‑‑ it was not only irrational, it also reflected a failure to enforce the essence of the party's agreement. There was an earlier decision in this case by the Third Circuit. One of counsel mentioned it. Correct. Did the court in that case address the standard of review and did it say that the arbitrator's interpretation of the arbitration clause was irrational? That issue was not brought on appeal to the Third Circuit. What happened just procedurally is that the arbitrator issued a clause construction ruling before there were ever any AAA rules in effect that prescribed the time period for seeking review. The case did not involve this particular ‑‑ No, it was a class certification decision, essentially, and that was the only issue that was raised on appeal to the Third Circuit. Thank you. Anything further? Mr. Rose, thank you very much. Thank you. Mr. Katz, thank you. Very helpful argument.  Thank you, Your Honor.